1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| ASA NEAL GOODIE, | ) 1:09-CV-01142 LJO JMD HC |
| Petitioner, | ) FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | ) |
| JOHN MARSHALL, | ) THIRTY (30) DAY DEADLINE TO FILE OBJECTIONS |
| Respondent. | ) |

10

11

12

13

14

15      Asa Neal Goodie  (hereinafter "Petitioner") is a state prisoner proceeding *pro se* with a

16   petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

17                                    **PROCEDURAL HISTORY**

18      Petitioner is currently in the custody of the California Department of Corrections and

19   Rehabilitation pursuant to a October 17, 2006, jury verdict finding Petitioner guilty of being a felon

20   in possession of a firearm (Cal. Penal Code § 12021(a)(1)).  (CT at 178.)  In a bifurcated proceeding,

21   the trial court found that Petitioner had a prior strike conviction pursuant to California Penal Code §

22   667(b)-(i).  The trial court imposed a term of eight years in prison, consisting of the upper term of

23   three years for the substantive offense, doubled pursuant to California Three Strikes Law, plus two

24   one year prison term enhancements.  (Lod. Doc. 6 at 2.)

25      Petitioner appealed his conviction to the California Court of Appeal, Fifth Appellate District,

26   which issued a reasoned opinion on April 2, 2008, affirming Petitioner's conviction.  (*See* Lod. Doc.

27   6.)  Petitioner filed a petition for review with the California Supreme Court, which the court denied

28   on July 9, 2008.

1   On June 18, 2009, Petitioner filed the instant federal petition for writ of habeas corpus in the

2   Central District of California.  The case was transferred to this Court on June 29, 2009.

3   On November 18, 2009, Respondent filed an answer to the petition, to which Petitioner filed

4   a traverse on February 17, 2010.

5   **FACTUAL BACKGROUND**[1]

6   On February 16, 2006, Parole Agent Sean Lozano observed Margarita
    Aguilar[2] exit apartment F in an apartment complex in Bakersfield. Lozano also saw
7   appellant walk out of the apartment complex area, but did not see if appellant exited
    any particular apartment unit. Police Officer Marcela Garcia arrived to assist in a
8   search of apartment F. When Garcia arrived, Aguilar was standing on the curb outside
    the complex.

9   The officers entered the apartment to conduct a parole search. There were no
10  people present in the one-bedroom apartment. There was one bed in the bedroom, and
    both male and female clothing strewn about along with papers and personal items.

11  On top of an end table in the bedroom were a computer and a Kel-Tec
12  .32-caliber handgun in plain view. The handgun was loaded with ammunition in a clip
    and a live round in the firing chamber. A wallet under the table contained appellant's
13  identification card.[3] No other identification cards were found in the wallet or the
    apartment. Drug paraphernalia and a scale consistent with drug sale use were also
14  found in the bedroom.

15  Officer Garcia found a billing statement from Cox Communications addressed
    to appellant at the apartment F address in a kitchen drawer. The bill was dated
16  January 18, 2006, and had a due date of February 13, 2006. A current Pacific Gas and
    Electric bill addressed to a Jacoby Jones also was found.

17
18  Aguilar told Agent Lozano that she lived in apartment F. Aguilar told Officer
    Garcia that she had lived in that apartment for three to four months, but it was her
    brother, Dennis Belmonte, who was on the rental agreement, although he did not stay
19  there often.

20  Officer Garcia testified that a man named Shandrell Epps had been located
21  near the apartment carrying $1,300 in cash, a large number of Ecstasy pills, and keys
    to apartment F. When Garcia asked Aguilar if Epps was supposed to have a key to the
    apartment, Aguilar said he was not. No keys to apartment F were found on either

22

23  [1]These facts are derived from the California Court of Appeal's opinion issued on April 2, 2008. (*See* Lod. Doc. 6.)
24  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed
    to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Davis*
25  *v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *Moses v. Payne*, 555 F.3d 742, 746 n. 1 (9th Cir. 2009).

26  [2]Aguilar was tried with appellant, but is not a party to this appeal.

27  [3]The identification card showed an address on 19th Street, apartment C, which appellant provided Parole Officer
    Charles Moore as his residential address. Moore last saw appellant on September 1, 2005, and had been unable to make
    contact with appellant at that address on September 5, 12, and 15, 2005. Appellant's subsequent parole officer, Nancy Kolb,
28  had no current address for appellant, and he was considered a parolee at large as of February 10, 2006.

1   Aguilar or appellant.

2       Officer Garcia spoke to Denyse Ahrens, the owner of the apartment building.
3   She took over as manager of the apartments in January of 2006. Ahrens expressed
    concern about testifying because she was warned of possible repercussions if she did.
    She testified that she had known appellant since he was in grade school, and she was
4   familiar with Aguilar as one of the people appellant associated with. Ahrens had seen
    Aguilar around the apartment building.
5
6       Ahrens stated that it was Dennis Belmonte who rented the apartment and that
    he "stayed there." She did not know everyone who regularly stayed at the apartment,
    but thought that Aguilar had been living there for four to six months. Ahrens assumed
7   Aguilar lived there because she had seen her coming out of the apartment in a house
    robe and slippers. Ahrens thought appellant stayed in the apartment two to three days
8   a week, but he wasn't there all of the time. Appellant paid the $350 rent on several
    occasions, but since the tenants in the various units knew each other well and passed
9   rent to one another to give to her, Ahrens was not sure whether appellant had
    provided the rent money or whether he was just passing it along to her from someone
10  else.

11      Officer Garcia testified that Ahrens told her appellant had paid the rent several
    times in cash, and, at the time she spoke to Ahrens, she did not qualify the statement
12  as she did at trial.

13  (Lod. Doc. 6 at 2-4.)

14                          **DISCUSSION**

15  **I.     Jurisdiction**

16      A person in custody pursuant to the judgment of a state court may petition a district court for

17  relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or

18  treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529

19  U.S. 362, 375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by

20  the United States Constitution.  While Petitioner is currently incarcerated at California Mens Colony

21  in San Luis Obispo, California,[4] Petitioner's custody arose from a conviction in the Kern County

22  Superior Court.  (Pet. at 2.)  As Kern County falls within this judicial district, 28 U.S.C. § 84(b), the

23  Court has jurisdiction over Petitioner's application for writ of habeas corpus.  *See* 28 U.S.C. §

24  2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district

25  court where the petitioner is currently in custody or the district court in which a state court convicted

26  and sentenced the petitioner if the state "contains two or more Federal judicial districts").

27  _____

28      [4]The city of San Luis Obispo is a part of San Luis Obispo County, which is within the jurisdiction of the Central
    District of California.  *See* 28 U.S.C. § 84(a).

1  **II.**      **AEDPA Standard of Review**

2        On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of

3  1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's

4  enactment.  *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499

5  (9th Cir. 1997).  The instant petition was filed after the enactment of AEDPA and is consequently

6  governed by its provisions.  *See Lockyer v. Andrade*, 538 U.S. 63, 70 (2003).  Thus, the petition

7  "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was

8  'contrary to, or involved an unreasonable application of, clearly established Federal law, as

9  determined by the Supreme Court of the United States.'"  *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir.

10  2007) (quoting 28 U.S.C. § 2254(d)(1))*, overruled in part on other grounds*, *Hayward v. Marshall*,

11  603 F.3d 546, 555 (9th Cir. 2010) (en banc); *see Lockyer*, 538 U.S. at 70-71.

12        Title 28 of the United States Code, section 2254 remains the exclusive vehicle for

13  Petitioner's habeas petition as Petitioner is in the custody of the California Department of

14  Corrections and Rehabilitation pursuant to a state court judgment.  *See Sass v. California Board of*

15  *Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) *overruled in part on other grounds*,

16  *Hayward*, 603 F.3d at 555.  As a threshold matter, this Court must "first decide what constitutes

17  'clearly established Federal law, as determined by the Supreme Court of the United States.'"

18  *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly

19  established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the

20  Supreme Court's] decisions as of the time of the relevant state-court decision."  *Id.* (quoting

21  *Williams v. Taylor*, 529 U.S. at 412).  "In other words, 'clearly established Federal law' under §

22  2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time

23  the state court renders its decision."  *Id.*  Finally, this Court must consider whether the state court's

24  decision was "contrary to, or involved an unreasonable application of, clearly established Federal

25  law."  *Id.* at 72 (quoting 28 U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas

26  court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the

27  Supreme] Court on a question of law or if the state court decides a case differently than [the] Court

28  has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 413; *see also Lockyer*, 538

1    U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if

2    the state court identifies the correct governing legal principle from [the] Court's decisions but

3    unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.

4    "[A] federal court may not issue the writ simply because the court concludes in its independent

5    judgment that the relevant state court decision applied clearly established federal law erroneously or

6    incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.   A federal habeas court

7    making the "unreasonable application" inquiry should ask whether the State court's application of

8    clearly established federal law was "objectively unreasonable." *Id*. at 409.

9         Petitioner bears the burden of establishing that the state court's decision is contrary to or

10   involved an unreasonable application of United States Supreme Court precedent.  *Baylor v. Estelle*,

11   94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth

12   Circuit precedent remains relevant persuasive authority in determining whether a state court decision

13   is objectively unreasonable.  *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the

14   Supreme Court's precedents are binding on the Arizona court, and only those precedents need be

15   reasonably applied, we may look for guidance to circuit precedents"); *Duhaime v. Ducharme*, 200

16   F.3d 597, 600-01 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it can no longer

17   reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on

18   a federal Constitutional issue....This does not mean that Ninth Circuit caselaw is never relevant to a

19   habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining

20   whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and

21   also may help us determine what law is 'clearly established'").   Furthermore, the AEDPA requires

22   that the Court give considerable deference to state court decisions.  The state court's factual findings

23   are presumed correct.  28 U.S.C. § 2254(e)(1).  A federal habeas court is bound by a state's

24   interpretation of its own laws.  *Souch v. Schiavo*, 289 F.3d 616, 621 (9th Cir. 2002).

25        The initial step in applying AEDPA's standards is to "identify the state court decision that is

26   appropriate for our review."  *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).  Where more

27   than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last

28   reasoned decision.  *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that

later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order).  Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to or an unreasonable application of clearly established federal law.  *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003).  While both the California Court of Appeal and the California Supreme Court reached the merits of Petitioner's claims, the California Supreme Court's decision was consisted of a summary denial.  Thus, the Court looks through that decision to the last reasoned decision, namely, the decision by the California Court of Appeal.  *See Nunnemaker*, 501 U.S. at 804.

**III.**     **Review of Petitioner's Claims**

The petition for writ of habeas corpus contains nine grounds for relief. Specifically, Petitioner contends that: (1) there was insufficient evidence to support his conviction; (2) prosecutorial misconduct occurred; (3) the trial court erroneously admitted evidence regarding Petitioner's parole status; (4) the trial court erroneously admitted an exhibit; (5) Petitioner's Confrontation Clause rights were violated by the trial court's refusal to strike incriminating hearsay statements made by Petitioner's co-defendant; (6) Petitioner's due process rights were violated by the trial court's refusal to issue pinpoint jury instructions; (7) cumulative error resulted; (8) ineffective assistance of counsel; and (9) the trial court's imposition of the upper term violated Petitioner's constitutional rights.

> **A.**     *Ground One: Sufficiency of the Evidence*

Petitioner contends his due process rights were violated as there was insufficient evidence to convict him of being a felon in possession of a firearm.  The California Court of Appeal rejected Petitioner's claim, finding that there was sufficient evidence to support his conviction.  (Lod. Doc. 6 at 4-6.)

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Jackson v. Virginia*, 443 U.S. 307, 314 (1979) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)).   "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005)

1  (noting that under AEDPA, a petition for habeas corpus may only be granted where the state court's

2  application of *Jackson* was objectively unreasonable).  Thus,  a state prisoner is only entitled to

3  habeas relief on this ground where no rational trier of fact could have found proof beyond a

4  reasonable doubt based on the evidence adduced at trial.  *Jackson*, 443 U.S. at 324; *see McDaniel v.*

5  *Brown*, 130 S. Ct. 665, 666 (2010) (per curiam).

6        Pursuant to the Supreme Court's holding in *Jackson*, the test to determine whether a factual

7  finding is fairly supported by the record is "whether, after reviewing the evidence in the light most

8  favorable to the prosecution, any rational trier of fact could have found the essential elements of the

9  crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see Lewis v. Jeffers*, 497 U.S. 764, 781

10  (1990); *Bruce v. Terhune*, 376 F.3d 950 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 319) (stating

11  "*Jackson* cautions reviewing courts to consider the evidence 'in the light most favorable to the

12  prosecution'").  Where the record supports conflicting inferences, a federal habeas court "must

13  presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such

14  conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.

15  Additionally, a jury's credibility determination is "entitled to near-total deference under *Jackson*,"

16  *Bruce*, 376 F.3d at 957, as assessing the credibility of witnesses is generally beyond the scope of a

17  *Jackson* review, *Schlup v. Delo*, 513 U.S. 289, 330 (1995).  Lastly, a federal habeas court must

18  presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1); *Kuhlmann v.*

19  *Wilson*, 477 U.S. 436, 459 (1986).  This presumption of correctness applies to a state appellate

20  court's determinations of fact as well as those of a state trial court.  *Tinsley v. Borg*, 895 F.2d 520,

21  525 (9th Cir. 1990).  Although the presumption of correctness does not apply to a state court's

22  determinations of legal questions or to mixed questions of law and fact, a state court's factual

23  findings underlying its conclusions on mixed issues are accorded a presumption of correctness.

24  *Lambert v. Blodgett*, 393 F.3d 943, 976 (9th Cir. 2004); *see also Sumner v. Mata*, 455 U.S. 591, 597

25  (1982) (per curiam) (holding that the questions of fact that underlie mixed questions are governed by

26  the presumption contained in 28 U.S.C. § 2254).

27  \\\

28  \\\

1    Sufficiency of evidence claims are judged by "the substantive elements of the criminal

2 offense as defined by state law." *Jackson*, 443 U.S. at 324, n.16.  Petitioner was convicted of being a

3 felon in possession of a firearm pursuant to California Penal Code section 12021(a)(1).  As the

4 California Court of Appeal stated in its reasoned decision affirming Petitioner's conviction, Section

5 12021 requires two elements–namely, the proscribed act of possession of a firearm and the general

6 intent to commit this proscribed act.  (Lod. Doc. 6 at 5) (quoting *People v. Spirlin*, 81 Cal. App. 4th

7 119, 130 (2000)).  The Court of Appeal observed that possession may be either actual or constructive

8 as long as it is intentional.  Petitioner conviction's was based on a theory of constructive possession.

9 The Court of Appeal found that there was sufficient evidence to uphold the conviction as:

10        An individual has constructive possession "when the weapon, while not in his
       actual possession, is nonetheless under his dominion and control, either directly or
11       through others." (*People v. Pena* (1999) 74 Cal.App.4th 1078, 1083-1084.)
       "'Possession may be imputed when the contraband is found in a location which is
12       immediately and exclusively accessible to the accused and subject to his dominion
       and control' [citation] or which is subject to the joint dominion and control of the
13       accused and another [citations]." (*People v. Francis* (1969) 71 Cal.2d 66, 71.)
              Sufficient circumstantial evidence exists from which the jury could find that
14       appellant had possession of the weapon found in the bedroom of the apartment.
       Appellant was seen coming out of the apartment complex where apartment F was
15       located. Ahrens testified that appellant stayed at the apartment two to three days a
       week and paid the rent on several occasions. Officer Garcia discovered appellant's
16       wallet in the only bedroom of the apartment, directly beneath the table where the
       handgun was found. Garcia also found a current bill addressed to appellant at that
17       apartment in a drawer in the kitchen.
              Appellant points to evidence that, if believed by the jury, might have led to a
18       different verdict. This consisted of testimony that there was a current PG & E billing
       statement in the apartment addressed to a Jacoby Jones, and that Shandrell Epps was
19       arrested outside the apartment building with a key to apartment F in his possession
       and a large amount of drugs and cash. But, such evidence is immaterial in light of the
20       standard of review of this court. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11; *People
       v. Stanley* (1995) 10 Cal.4th 764, 792-793.)

21

22 (Lod. Doc. 6 at 5.)

23    Initially the Court notes that it must accept the appellate court's findings regarding the

24 requirements necessary to support a conviction under California Penal Code section 120221(a)(1).

25 *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) (stating that "a state court's

26 interpretation of state law, including one announced on direct appeal of the challenged conviction,

27 binds a federal court sitting in habeas corpus"); *see also Musladin v. Lamarque*, 555 F.3d 830, 838

28 n.6 (9th Cir. 2009) (finding that habeas court must presume that state courts know and follow the law

1  and that state-court decisions be given the benefit of the doubt under AEDPA deferential standards).

2  Additionally, the Court notes that in reviewing sufficiency of evidence claims, California courts

3  expressly follow the standard articulated by the United States Supreme Court in *Jackson*. *See People*

4  *v. Smith*, 37 Cal. 4th 733, 738-739 (2005); *see also People v. Catlin*, 26 Cal. 4th 81, 139 (2001).

5  While "the California Court of Appeal decision does not cite to the relevant federal case law in

6  reaching its decision regarding sufficiency of the evidence, such a citation is not required 'so long as

7  neither the reasoning nor the result of the state-court decision contradicts' Supreme Court precedent.

8  [quotation]" *Juan H.*, 408 F.3d at 1275 n.12 (quoting *Early v. Packer*, 537 U.S. 3, 8 (2003) (per

9  curiam)). Thus, the relevant question before a federal habeas court "remains whether the state court

10  in substance made an objectively unreasonable application of the *Jackson* standards for sufficiency

11  of the evidence." *Id*.

12      The Court finds that the state court's decision does not constitute an objectively unreasonable

13  application of the *Jackson* standard. As the appellate court noted, there was evidence upon which a

14  reasonable juror could have relied on to find that the firearm was in a location that was immediately

15  and exclusively accessible by Petitioner and subject to Petitioner's dominion and control beyond a

16  reasonable doubt. The record illustrated that Petitioner's wallet was found directly beneath the table

17  containing the handgun. (RT at 73, 78-79, 83.) A cable bill for that apartment was addressed to

18  Petitioner and was found in a drawer in the apartment's kitchen. (Id. at 80.) The residence's

19  landlord told police officers that she had Petitioner staying at the residence on multiple nights of the

20  week and had paid rent on that apartment on several occasions. (Id. at 180-181.) While evidence

21  produced at the trial also supported a finding of not guilty, the California Court of Appeal correctly

22  noted such evidence is immaterial as the *Jackson* standard of review presumes that the trier of fact

23  resolved all conflicts of evidence in favor of the prosecution. *Jackson*, 443 U.S. at 326.

24  Consequently, the Court finds that Petitioner is not entitled to habeas corpus relief on this ground.

25      **B.      Ground Two: Prosecutorial Misconduct**

26      Petitioner's second ground for relief alleges that he was denied due process of the law by

27  prosecutorial misconduct. Specifically, Petitioner complains that the prosecutor violated a stipulated

28  agreement to exclude certain evidence. Prior to trial, Petitioner had stipulated to a prior felony and

asked that the trial be bifurcated with separate proceedings for the guilt phase and the prior strike and

prison time allegations.   As summarized by the California Court of Appeal, the following resulted:

> Defense counsel then asked that "all evidence relating to observations and contact with [appellant] prior to and including his arrest" be excluded as he was not challenging the stop, detention, and arrest. The People joined in the motion, stating that they had submitted a similar motion in limine which "basically asks the same finding." That motion stated, inter alia:

> > "The People request a stipulation by the defense as to the following: [¶] The car stop, contact and detention of [appellant] and [ ] Aguilar in this case with law enforcement and the subsequent search of [appellant]'s person and apartment located at ... Apt. # F, were lawful. Therefore, these issues are not for the jury's consideration in deciding whether [appellant] has been proven guilty of the charged crime."

The trial court granted the request.

> At trial, Parole Agent Lozano identified himself as "employed with California Department of Corrections & Rehabilitation as a parole agent, assigned to a fugitive apprehension team." The following colloquy then occurred between the prosecutor and Lozano:

> > "Q. What is a fugitive apprehension team?

> > "A. Our objective is to seek out parolees at large, those who have absconded their parole supervision, and also concentrate on parolees who are currently facing new criminal charges.

> > "Q. What does it mean to be a parolee at large?

> > "A. A parolee at large is basically once they are released from prison, they are mandated to check in with the parole agents for supervision. Once they no longer keep in contact with the parole agent, either move residences without informing them or get involved in other criminal activity, a warrant is issued and they become at large.

> > "Q. And then they are assigned to your case load?

> > "A. Yes.

> > "Q. And did you have a case load in this job back on February 16th, 2006?

> > "A. Yes, I did.

> > "Q. And on that day did you come into contact with any individuals that were part of your case load?"

At this point, defense counsel objected, a sidebar occurred, and questioning continued.

> > "Q. "... You saw somebody-you came into contact with somebody that was part of your case load back on February 16th of 2006, correct?

1

2          "A. Yes, I did.

3          "Q. Do you see that person that you contacted that was part of your
           case load on February 16, 2006, in court today?

4          "[Defense Counsel]: I would have to object based on our prior
           stipulation for the record.

5

6          "The Court: Objection overruled.

7          "A. Yes, I do, [appellant] wearing a striped shirt...."

8          After Agent Lozano's testimony, the following discussion took place between
           the court and counsel:

9          "[Defense Counsel]: So I understand it, when Officer Lozano testified
           that he saw [appellant] exit the complex, I just want to make sure the

10         objection was on the record that we objected to that testimony because
           of our stipulation and ... in limine motion that was granted by your

11         Honor regarding observations and contact with [appellant] prior to his
           arrest, which was not allowed, just as long as we have a record of that.

12

13         "The Court: My understanding was that what you were talking about
           was prior to his arrest. I didn't know the facts of the case.

14         "[Defense Counsel]: Right.

15         "The Court: I thought what you were talking about is when he was
           convicted of a felony and he was under the supervision of parole

16         officers, they couldn't get into what-those types of transactions. But
           when they see him physically at the scene of the alleged crime, that to

17         me is contemporaneous with his arrest, totally different.

18         "[Defense Counsel]: I guess to narrow the issue down is we didn't
           challenge his contact, detention, and arrest based on the stipulation that

19         no testimony prior to that time was allowed. [¶] Lozano testified that
           he saw [appellant] exit the apartment[5] and that was before he was

20         even contacted ... and arrested. That was my issue."

21         The prosecutor responded:

22         "Your Honor, just so we have a clear record, it's my position that that
           was appropriately ruled upon by your Honor and allowed to be testified

23         to because of the questioning during cross-examination of previous
           witnesses that has attempted to separate [appellant] from that location.

24         Accordingly, I think it was appropriate to allow it...."

25         The court agreed, and noted, "That was taken into consideration, as well."

26         Following the verdict, appellant filed a new trial motion, arguing, in part, that
           the questions asked of Agent Lozano by the prosecutor constituted prosecutorial

27

28
           _____
           [5]The court clarified, and defense counsel agreed, that he meant to say "complex" instead of "apartment."

1    misconduct. The People filed an opposition to the motion, arguing that eliciting
     testimony from the parole agent regarding appellant's parole status did not violate any
2    of the stipulations entered into by the parties or any orders of the court.

3          At the subsequent hearing, the trial court denied the new trial motion, stating:

4          "... I did have an opportunity to review my notes, conducted an independent
           review of the evidence, my notes, read over the witness statements I took
5          down, and from that independent review I find that [appellant] did, in fact,
           receive a fair trial on the merits. The verdict is supported by substantial
6          evidence. Find no error of law or questions of law. Find that the verdict is not
           contradictory to the law or the evidence. Find that there was no prosecutorial
7          misconduct. Based on the above findings, deny the motion for new trial."

8    (Lod. Doc. 6 at 7-10.)

9          The standard of review for a claim of prosecutorial misconduct raised in a petition for writ of

10   habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power."

11   *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637,

12   642 (1974)); *accord Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995). A prosecutor's

13   introduction of testimony in violation of an in limine order may constitute misconduct. *See Thomas*

14   *v. Hubbard*, 273 F.3d 1164, 1175-1177 (9th Cir. 2001), *overruled on other grounds by Payton v.*

15   *Woodford*, 299 F.3d 815 (9th Cir. 2002). The inquiry before a habeas court is "whether the

16   prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a

17   denial of due process." *Darden*, 477 U.S. at 181 (internal quotation marks omitted) (stating that "[i]t

18   is not enough that the prosecutors' remarks were undesirable or even universally condemned");

19   *Renderos v. Ryan*, 469 F.3d 788, 799 (9th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 643) ("Thus, to

20   succeed, [Petitioner] must demonstrate that it 'so infected the trial with unfairness as to make the

21   resulting conviction a denial of due process"). Thus, the first issue for the Court to decide is whether

22   the prosecutor's remarks or conduct were improper and second, whether such remarks or conduct

23   infected the trial with unfairness. *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005) (citing

24   *Darden*, 477 U.S. at 181).

25         The California Court of Appeal found that there was no prosecutorial misconduct as the

26   evidence elicited by the prosecutor was relevant to establishing Petitioner's residence and did not

27   exceed the bounds of the parties' stipulation. (Lod. Doc. 6 at 11-12.) The appellate court concluded

28   that even if the conduct rose to the level of prosecutorial misconduct, Petitioner had not been denied

1  a fundamentally fair trial by this conduct as the jury was aware of Petitioner's previous felony

2  conviction.

3         The Court agrees with the California Court of Appeal's conclusion.  By virtue of the charges,

4  being a felon in possession of a firearm and Petitioner's stipulation prior to trial that he had a

5  previous serious felony conviction, the fact that Petitioner was a former felon was widely known to

6  the jury.  Thus, the fact that he was then on parole would not have caused undue prejudice against

7  him such that he was denied a fundamentally fair trial.  Any bias stemming from his parolee status is

8  inherently related to his prior conviction, a fact known to the jury.  Thus, the Court finds Petitioner is

9  not entitled to habeas corpus relief.

10        *C.     Grounds Three and Four: Erroneous Admission of Evidence*

11        In Ground Three, Petitioner contends that the trial court's admission of evidence that

12  Petitioner was a high control parolee constitutes impermissible character evidence that was

13  erroneously admitted as rebuttal evidence.[6]  In Ground Four Petitioner contends that admission of

14  Exhibit 5, the cable bill, was erroneous as no foundation was laid under any hearsay exceptions.

15        To the extent Petitioner is challenging the propriety of this evidence as rebuttal evidence

16  under state law, the Court finds that the allegation is an inadequate basis for habeas corpus relief as

17  habeas corpus relief is not available for an alleged error in the interpretation or application of state

18  law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Thus, regardless of " whether or not the

19  admission of evidence is contrary to a state rule of evidence, a trial court's ruling does not violate

20  due process unless the evidence is of such quality as necessarily prevents a fair trial." *Windham v.*

21  *Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998) (citation and internal quotations omitted); *see also*

22  *Romano v. Oklahoma,* 512 U.S. 1, 10 (1994) (stating that "evidence [that] may have been irrelevant

23  as a matter of state law, however, does not render its admission federal constitutional error").  A

24  federal habeas court has "no authority to review alleged violations of a state's evidentiary rules," as

25

26        [6]To the extent Petitioner is challenging the high control parolee evidence on the grounds it is impermissible
27  propensity evidence, the Court notes that such a ground does not provide habeas relief as the United States Supreme Court
   has expressly reserved that question.  *See Alberni v. McDaniel*, 458 F.3d 860, 866-867 (9th Cir. 2006) (holding that a due
28  process right against admission of propensity evidence "has not been clearly established by the Supreme Court, as required
   by AEDPA").

1   the court's "role is limited to determining whether the admission of evidence rendered the trial so

2   fundamentally unfair as to violate due process." *Windham*, 163 F.3d at 1103 (citing *Jammal v. Van*

3   *de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) and *Reiger v. Christensen*, 789 F.2d 1425, 1430 (9th

4   Cir. 1986)).  Furthermore, the Supreme Court has "defined the category of infractions that violate

5   'fundamental fairness' very narrowly." *Estelle*, 502 U.S. at 72 (quoting *Dowling v. United States*,

6   493 U.S. 342, 352 (1990)).

7        Petitioner's attack on the evidence pertaining to his high control parolee status centers on the

8   alleged abuse of discretion by the trial court in admitting this evidence.  (Pet. App. A at 25-27.)  An

9   allegation that a trial court abused its discretion in admitting the evidence cannot form the basis for

10  habeas corpus relief.  *See Souch v. Schaivo*, 289 F.3d 616, 623 (9th Cir. 2002) (citing *Lewis v.*

11  *Jeffers*, 497 U.S. 764, 780 (1990) for proposition that habeas relief is not available for errors of state

12  law).  In order to state a cognizable habeas claim, Petitioner must additionally allege that the state's

13  discretionary admission of this evidence violated settled constitutional principles.  *See Gonzalez v.*

14  *Knowles*, 525 F.3d 1006, 1012 (9th Cir. 2008) (citing *Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir.

15  2000) ("A particular abuse of discretion by a state court may amount also to a violation of the

16  Constitution, but not every state court abuse of discretion has the same effect")).

17       Likewise, Petitioner's contention regarding the admission of the cable bill must be rejected as

18  those allegations are centered on state law grounds.  Petitioner contends that the prosecutor had not

19  laid a proper foundation to admit the cable bill as an exception to hearsay and that the trial court's

20  admission of the cable bill constitutes an abuse of discretion.  (Pet. App. A at 32-35.)  As the Ninth

21  Circuit noted in *Johnson v. Sublett*, 63 F.3d 926, 931 (9th Cir. 1995), the question of whether there

22  was proper foundation under state law does not raise a federal habeas issue.  Petitioner fails to allege

23  that the admission of evidence relating to his parole status or the cable bill rendered his trial

24  fundamentally unfair.  Even assuming Petitioner had made such an argument, the Court is persuaded

25  that no prejudice resulted from the admission of this evidence.  As the California Court of Appeal

26  noted:

27          Agent Moore's brief reference to appellant as a "high-control person" with whom he
            needed to make contact twice a month did not unduly prejudice appellant. The jury
28          was informed of the parties' stipulation that appellant previously had been convicted

1    of a felony. With that information, it was reasonable for the jurors to assume that
2    appellant had been on parole or probation and was required, at some point, to keep in
     contact with his probation or parole officer.

3    (Lod. Doc. 6 at 15.)

4    The only prejudice stemming from his parole status that could have undermined Petitioner's

5    right to a fundamentally fair trial was that he had been previously convicted of a serious felony.

6    Thus, the Court finds that Petitioner's due process rights were not violated by the admission of

7    evidence pertaining to his parole status.  Similarly, the cable bill did not render Petitioner's trial

8    fundamentally unfair as the State court found that the cable bill was not erroneously admitted hearsay

9    evidence.  The appellate court observed that the cable bill was not admitted to show that Petitioner

10   owed the cable company the sum of money listed; rather, the bill was admitted to show Petitioner's

11   residence.  More importantly, the Court notes that Petitioner has not demonstrated how his right to a

12   fundamentally fair trial was undermined by this evidence.  Consequently, the Court finds Petitioner

13   is not entitled to habeas corpus relief for these alleged errors.

14           **D.     *Ground Five: Confrontation Clause***

15           Petitioner contends that the testimony of Officer Garcia, the prosecutor's investigative

16   officer, violated Petitioner's Confrontation Clause rights.  Specifically, Petitioner challenges Officer

17   Garcia's testimony explaining why she did not conduct certain additional investigation on the basis

18   that Officer Garcia's testimony contained statements by Petitioner's non-testifying co-defendant.  As

19   summarized by the California Court of Appeal:

20           The record shows the following. Prior to trial, the parties agreed that statements made
             by codefendant Aguilar be excluded, to avoid Aranda issues, unless Aguilar testified.
21           During cross-examination of Officer Garcia, defense counsel asked the officer if she
             had contacted Dennis Belmonte, the person who Aguilar claimed had rented the
22           apartment, "regarding his relationship to the gun." Officer Garcia stated that she had
             not. When asked whether "the person who rented the apartment should be questioned
23           about whether or not he has a gun in that apartment? Do you think that's relevant?"
             Officer Garcia stated, "No. [Aguilar] had already told me who the gun belonged to."
24
25   (Lod. Doc. 6 at 18.)

26           The Confrontation Clause protects a defendant from unreliable hearsay evidence being

27   presented against him during trial.  *See* U.S. Constitution, Amendment VI.  The Confrontation

28   Clause of the Sixth Amendment specifically provides that "[i]n all criminal prosecutions, the accused

1   shall enjoy the right . . . to be confronted with the witnesses against him." *Id*.  The Sixth

2   Amendment's Confrontation Clause was made applicable to the states through the Due Process

3   Clause of the Fourteenth Amendment. *Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527, 2531

4   (2009) (citing *Pointer v. Texas*, 380 U.S. 400, 403 (1965)).   In *Crawford v. Washington*, 541 U.S. 36

5   (2004), the United States Supreme Court held that the Confrontation Clause bars the state from

6   introducing out-of-court statements which are testimonial in nature, unless "the declarant is

7   unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford*,

8   541 U.S. at 59.   "The main and essential purpose of confrontation is to secure for the opponent the

9   opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315-316 (1974).  However, while

10  the Confrontation Clause of the Sixth Amendment "'guarantees an opportunity for effective

11  cross-examination,' this does not mean 'cross-examination that is effective in whatever way, and to

12  whatever extent, the defense might wish.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)

13  (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)).  The admission of a non-

14  testifying co-defendant's hearsay confession violates a defendant's rights under the Confrontation

15  Clause when that statement facially, expressly, clearly, or powerfully implicates the defendant.  *See*

16  *Bruton v. United States*, 391 U.S. 123, 135-136 (1968); *Richardson v. Marsh*, 481 U.S. 200, 208

17  (1987) (limiting *Bruton* to statements that are incriminating on their face or expressly incriminating

18  since statements that only become incriminating when linked with other evidence are inherently less

19  prejudicial).

20         The California Court of Appeal expressly reserved judgement on whether the testimony by

21  Officer Garcia met the standard set forth by *Bruton*.  Rather, the appellate court found that even

22  assuming that the testimony violated Petitioner's Confrontation Clause, the error was harmless

23  beyond a reasonable doubt pursuant to *Chapman v. California*, 386 U.S. 18 (1967).  (Lod. Doc. 6 at

24  21-22.)  The United States Supreme Court has held that where a state court finds a constitutional

25  error harmless under *Chapman*, the federal court may not grant habeas relief unless the state court

26  "applied harmless-error review in an objectively unreasonable manner." *Mitchell v. Esparza*, 540

27  U.S. 12, 18-19 (2003) (citations omitted).  Here, the appellate court found that the other evidence

28  probative of Petitioner's guilt was sufficiently strong and Officer Garcia's statement was merely a

1    minor corroboration of this evidence.  The Court finds this reasoning persuasive.  Additionally, the

2    Court agrees that the statement attested to by Officer Garcia, namely that Aguilar had already told

3    Officer Garcia who the gun belonged to, at best can be interpreted as corroborating the other

4    evidence.  Standing alone, the statement does not actually implicate Petitioner as Officer Garcia did

5    not testify that Aguilar told her that the gun belonged to Petitioner.[7]  As the appellate court's decision

6    regarding the harmless nature of the statement was not objectively unreasonable, Petitioner is not

7    entitled to habeas corpus relief on this ground.

8        **E.    Ground Six: Instructional Error**

9            In his sixth ground for relief, Petitioner contends that his due process rights were violated by

10   the trial court's refusal to issue a pinpoint instruction on the defense's theory.  Specifically,

11   Petitioner's counsel had requested the trial court issue a modified version of California Criminal Jury

12   Instruction ("CALCRIM") No. 373.  The original version of CALCRIM No. 373, and the version

13   that was issued to the jury, states:

14        The evidence shows that (another person/other persons) may have been involved in
          the commission of the crime charged against the defendant. There may be many
15        reasons why someone who appears to have been involved might not be a codefendant
          in this particular trial. You must not speculate about whether (that other person
16        has/those other persons have) been or will be prosecuted. Your duty is to decide
          whether the defendant on trial here committed the crime charged.

17
     Petitioner's counsel requested that the following paragraph or something similar be added to the end
18
     of the instruction, "but you may consider other persons involved or possibly involved in the
19
     commission of the crime as to whether or not the defendants in this case were involved beyond a
20
     reasonable doubt." (Pet. App. A at 46.)
21
            Generally, claims based on instructional error under state law are not cognizable on habeas
22
     corpus review.  *Estelle*, 502 U.S. at 71-72 (citing *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6
23
     (1983)).  Habeas relief is only warranted on the basis of a flawed jury charge where the error so
24
     infected the entire trial that the resulting conviction violates due process if the flaw amounted to
25

26   _____

27        [7]For this reason, the Court is inclined to find that the statement did not violate *Bruton*, which requires statement that
     expressly or facially incriminate Petitioner.  Here, the statement was that Aguilar already told Officer Garcia who the gun
28   belonged to and that was why Officer Garcia stopped her investigation.  While this implies that the gun belonged to Petitioner,
     it does not expressly or facially incriminate Petitioner.

1   constitutional error and caused prejudice.  *Estelle*, 502 U.S. at 72; *Calderon v. Coleman*, 525 U.S.

2   141, 145-47 (1998); *see also Pulido v. Chrones*, 487 F.3d 669, 673 n.3 (9th Cir. 2007).  A habeas

3   court must not merely consider whether an "instruction is undesirable, erroneous, or even universally

4   condemned" but must instead determine"'whether the ailing instruction by itself so infected the

5   entire trial that the resulting conviction violates due process.'"  *Henderson v. Kibbe*, 431 U.S. 145,

6   154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973)).

7       Here, the California Court of Appeal found that the even assuming that the trial court was

8   obliged to give the instruction, the trial court's failure to do so did not result in prejudice.  (Lod. Doc.

9   6 at 23-24.)  The appellate court noted that the jury was instructed with CALCRIM No. 103 which

10  explicitly placed the burden of proving Petitioner's guilt beyond a reasonable doubt on the

11  prosecution.  (Id. at 24.)  Further, "the jury knew from defense counsel's argument the defense theory

12  that appellant did not have dominion or control over the firearm" and that there was evidence others

13  had dominion and control.  (Id.)  The Court of Appeal concluded, "[u]nder these circumstances, it is

14  not reasonably probable that, had the jury been given appellant's proposed pinpoint instruction, it

15  would have come to any different conclusion in this case."  (Id.)

16      The Court notes that Petitioner is correct that the Sixth and Fourteenth Amendment

17  guarantees Petitioner a fundamentally fair trial that encompasses the right to present a defense.  (Pet.

18  App. A at 47-28.)  However, as noted by the appellate court, Petitioner was able to present his

19  defense and Petitioner presents no authority that mandates the issuance of pinpoint instructions.

20  While a criminal defendant is entitled to jury instructions presenting the crux of his defense, *Bradley*

21  *v. Duncan*, 315 F.3d 1091, 1098-1099 (9th Cir. 2002), there does not exist an entitlement to an

22  instruction that pinpoint certain aspects of the defense, *United States v. Hernandez-Escarsega*, 886

23  F.2d 1560, 1570 (9th Cir. 1989).  *See also United States v. Del Muro*, 87 F.3d 1078, 1081 (9th Cir.

24  1996).  Here, Petitioner does not contend that he was unable to present the defense that there was

25  third party culpability; rather, Petitioner contends that he was not given a pinpoint instruction of the

26  defense theory.  Thus, the Court agrees with the Court of Appeal that Petitioner was not prejudiced,

27  and therefore that Petitioner was not deprived of a fundamentally fair trial by the trial court's refusal

28  to issue a modified version of CALCRIM No. 373.  Consequently, Petitioner is not entitled to habeas

1   corpus relief on this ground.

2           *F.      Ground Seven: Cumulative Error*

3           In his seventh ground for relief, Petitioner contends that the cumulative effect of the alleged

4   errors resulted in a fundamentally unfair trial.

5           "The Supreme Court has clearly established that the combined effect of multiple trial court

6   errors violates due process where it renders the resulting criminal trial fundamentally unfair.

7   [Citation]  The cumulative effect of multiple errors can violate due process even where no single

8   error rises to the level of a constitutional violation or would independently warrant reversal." *Parle*

9   *v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (citing *Chambers v. Mississippi*, 410 U.S. 284, 290 n.

10  3, 298, 302-303 (1973)); *see also Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000)

11  (noting that cumulative error applies on habeas review).  Here, the California Court of Appeal held

12  that as all the complained of errors were either not erroneous or were not prejudicial, the cumulative

13  effect of these errors did not warrant reversal.  The Court agrees that Petitioner's right to a

14  fundamentally fair trial was not implicated by these alleged errors.  Consequently, the Court finds the

15  State court's decision to be objectively reasonable and Petitioner is not entitled to habeas corpus

16  relief on this ground.

17          *G.      Ground Eight: Ineffective Assistance of Counsel*

18          Petitioner contends that his Sixth Amendment right to counsel was violated by the ineffective

19  assistance rendered by his trial counsel.  Specifically, Petitioner contends that counsel's failure to

20  object to the use of his prior convictions to support the upper term and as a basis for imposing

21  sentence enhancements was deficient and prejudicial.

22          An allegation of ineffective assistance of counsel requires that a petitioner establish two

23  elements–(1) counsel's performance was deficient and (2) petitioner was prejudiced by the

24  deficiency.  *Strickland v. Washington*, 466 U.S. 668, 687(1984); *Lowry v. Lewis*, 21 F.3d 344, 346

25  (9th Cir. 1994).   Under the first element, the petitioner must establish that counsel's representation

26  fell below an objective standard of reasonableness, specifically identifying alleged acts or omissions

27  which did not fall within reasonable professional judgment considering the circumstances.

28  *Strickland*, 466 U.S. at 688; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995).

1   Judicial scrutiny of counsel's performance is highly deferential and there exists a strong presumption

2   that counsel's conduct fell within the wide range of reasonable professional assistance.  *Strickland*,

3   466 U.S. at 687; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

4        Second, the petitioner must show that counsel's errors were so egregious that the petitioner

5   was deprived of the right to a fair trial, namely a trial whose result is reliable.  *Strickland*, 466 U.S. at

6   687.   To prevail on the second element, the petitioner bears the burden of establishing that there

7   exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the

8   proceeding would have been different.  A reasonable probability is a probability sufficient to

9   undermine confidence in the outcome."  *Quintero-Barraza*, 78 F.3d at 1348 (quoting *Strickland*, 466

10  U.S. at 694).  A court need not determine whether counsel's performance was deficient before

11  examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.  *Strickland*,

12  466 U.S. at 697.  Since prejudice is a prerequisite to a successful claim of ineffective assistance of

13  counsel, any deficiency that was not sufficiently prejudicial to the petitioner's case is fatal to an

14  ineffective assistance of counsel claim.  *Id.*

15       Here, the California Court of Appeal denied Petitioner's claim, finding that no prejudice had

16  resulted as any error in failing to object was "harmless in light of the other valid aggravating factor

17  cited by the court."  (Lod. Doc. 6 at 25.)  The appellate court recognized that a trial court is

18  prohibited under former California Penal Code section 1170(b) from using any fact as both a

19  sentence enhancement and as a basis for imposing the upper term.  (Id.)  However, as noted by the

20  California Court of Appeal:

21          Here, the trial court also properly relied on appellant's other prior convictions.
        Appellant's probation report, which the court had an "opportunity to read and duly
22      consider," lists prior adult convictions dating back to 1998 and includes evading a
        pursuing police officer (Veh.Code, § 2800.2), driving without a valid license
23      (Veh.Code, § 12500), being drunk in public (§ 647, subd. (f)), disturbing the peace (§
        415, subd. (2)), three violations of driving without current registration (Veh.Code, §
24      4000, subd. (a)), two violations of driving while privilege revoked or suspended
        (Veh.Code, § 14601.1, subd. (a)), driving with alcohol while under age (Veh.Code, §
25      23224, subd. (a)), and two violations of driving under the influence (Veh.Code, §
        23152, subd. (a)). In addition, appellant's juvenile adjudications include battery (§
26      243), grand theft and burglary (§§ 466, 487), possession of counterfeit currency (§
        475), and possession of a pistol (§ 12101, subd. (a)).
27          The trial court also noted, not specifically as an aggravating factor but in its
        reasoning for denying appellant probation, that appellant's prior performance on
28      juvenile probation, misdemeanor probation, and state parole had been unsatisfactory.

1
2

> "It is well settled that it is not a dual use of facts to consider one's performance on parole notwithstanding consideration of the underlying conviction as an enhancement. [Citation.]" ( *People v. Whitten* (1994) 22 Cal.App.4th 1761, 1767.)

3
4
5
6

> Since "the finding of even one factor in aggravation is sufficient to justify the upper term" ( *People v. Steele* (2000) 83 Cal.App.4th 212, 226), any error in dual use was harmless ( *People v. Cruz, supra*, 38 Cal.App.4th at pp. 433-434). We therefore reject appellant's claim of prejudicial ineffective assistance of counsel. ( *Strickland v. Washington* (1984) 466 U.S. 668, 691-692; *People v. Boyette* (2002) 29 Cal.4th 381, 430 [prejudice is shown when there is a reasonable probability that, but for counsel's errors, the result would have been different].)

7   (Lod. Doc. 6 at 26-27.)

8       The Court does not find the Court of Appeal's decision regarding prejudice to be objectively

9   unreasonable.  As the appellate court articulated, there were multiple grounds upon which the trial

10  court could have imposed the upper term and the sentence enhancement.  Thus, even absent the

11  alleged deficiency by trial counsel, there is no reasonable probability that the trial court would not

12  have imposed the upper term and the sentence enhancements.  Consequently, Petitioner is not

13  entitled to habeas corpus relief on this ground.

14      **G.     *Ground Nine: Imposition of Upper Term***

15      Petitioner contends that the trial court's imposition of the upper terms violated his Sixth

16  Amendment right to a jury trial and Fourteenth Amendment right to due process of the law.[8]  (Pet.

17  App. A at 70-74).  Petitioner's argument is derived from *Apprendi v. New Jersey*, 530 U.S. 466

18  (2000) and its progeny.  In *Apprendi*, the United States Supreme Court overturned a state sentencing

19  scheme as violative of a criminal defendant's right to have a jury verdict based on proof beyond

20  reasonable doubt.  The sentencing scheme permitted a trial judge to enhance a defendant's penalty

21  beyond the prescribed statutory maximum upon a finding by a preponderance of the evidence that the

22  defendant committed the crime with racial animus.  *Id*. at 469.  The Supreme Court held that the

23  Sixth Amendment right to a jury trial required that "any fact that increases the penalty for a crime

24  beyond the prescribed statutory maximum must be submitted to jury, and proved beyond a

25

26
27
28

---

[8]The United States Supreme Court has previously stated that, "the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Jones v. United States*, 526 U.S. 227, 246 n. 6) (1999).  In *Apprendi v. New Jersey*, 530 U.S. 466, 475 (2000), the Supreme Court recognized that "[t]he Fourteenth Amendment commands the same answer."

U.S. District Court
E. D. California

1    reasonable doubt." *Id.* at 490.  In *Blakely v. Washington*, 542 U.S. 296, 303-304 (2004), the high

2    court explained that the "statutory maximum" is the maximum sentence a judge may impose based

3    exclusively on the facts reflected in the jury verdict or admitted by the defendant and not the

4    maximum sentence a judge may impose after finding additional facts.

5            The United States Supreme Court subsequently found that the imposition of upper terms, as

6    delineated in California's Determinate Sentencing Law, based on facts found by a judge violated a

7    criminal defendant's constitutional rights.  *See Cunningham v. California*, 549 U.S. 270, 293 (2007)

8    (overruling *People v. Black*, 35 Cal.4th 1238 (2005)).  The *Cunningham* court noted that the middle

9    term specified in California's statutes was the relevant statutory maximum for the purpose of

10   applying *Blakely* and *Apprendi*.  The high court thus concluded that the imposition of the upper term

11   based solely upon a trial judge's fact finding violated the defendant's Sixth and Fourteenth

12   Amendment rights because it "assigns to the trial judge, not the jury, authority to find facts that

13   expose a defendant to an elevated 'upper term' sentence." *Id.* at 274.

14           Here, the California Court of Appeal applied the correct standard of law.  Relying on the

15   California Supreme Court's decision in *People v. Black*, 41 Cal.4th 799, 806 (Cal. 2007) (hereinafter

16   *Black II*), the appellate court found that only one aggravating factor need to be proven for the

17   imposition of the upper term.  *See Butler v. Curry*, 528 F.3d 624, 642-643 (9th Cir. 2008).  The State

18   appellate court further noted that the California Supreme Court in *Black II* had found that a prior

19   conviction need not be proven to a jury beyond a reasonable doubt.  (Lod. Doc. 6 at 28-29.)  The

20   California Court of Appeal's reliance on *Black II* is appropriate as *Black II* correctly applies clearly

21   established Supreme Court precedent holding that a prior conviction is exempt from the requirement

22   of a jury finding and can be found by a judge.  *See Almendarez-Torres v. United States*, 523 U.S.

23   224, 244 (1998) (holding that fact of prior conviction need not be pleaded in an indictment or proved

24   beyond a reasonable doubt); *see also Apprendi*, 530 U.S. at 490 (emphasis added) (*"other than the*

25   *fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed

26   maximum must be submitted to a jury, and proved beyond a reasonable doubt"); *United States v.*

27   *Grisel*, 488 F.3d 844, 846 (9th Cir. 2007) (en banc).  Here, the California Court of Appeal observed

28   that "[i]n deciding to impose the upper term in this case, the trial court relied on appellant's

numerous prior convictions as an adult" and concluded that as a prior conviction is not subject to a jury finding, "the trial court's reliance on appellant's prior convictions did not conflict with the Sixth Amendment." (Lod. Doc. 6 at 29.) The Court does not find this decision to be an objectively unreasonable application of the Supreme Court precedents in *Apprendi* and *Almendarez-Torres*. Thus, the Court finds that Petitioner is not entitled to habeas corpus relief as his constitutional rights were not violated.

## **RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O' Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) *court* days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    August 16, 2010                        /s/ John M. Dixon**
                                                    UNITED STATES MAGISTRATE JUDGE